UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **JEFFREY HAROLD BOX** | **CIVIL ACTION NO. 24-1359** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **BERLIN SWEET, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Jeffrey Harold Box, a prisoner at Sabine Parish Detention Center ("SPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately October 1, 2024, under 42 U.S.C. § 1983. He names the following defendants: Warden Berlin Sweet, Assistant Warden Kaylynn Remedies, Sergeant Steve Procell, Sheriff Aaron Mitchell, Reverend Anthony Lowe, Sr., and Lieutenant Curry Richardson.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff, who is legally blind, claims that on June 27, 2024, Warden Berlin Sweet and Assistant Warden Kaylynn Remedies denied him a medical examination with an eye doctor, which he needed to obtain eyeglasses. [doc. # 1, p. 4]. He suggests that he sent letters and grievances to Sweet and Remedies about receiving medical care for his eyes, but weeks passed and "nothing . . . change[d]." *Id.* at 4-5. When Plaintiff filed his initial pleading, he stated that

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

he had an eye appointment scheduled. *Id.* at 6. In an amended pleading, Plaintiff states that he obtained contacts from "family eye care." [doc. # 7, p. 1].

Next, Plaintiff states that he tripped and fell over an inmate sleeping at the bottom of stairs, injuring his knees and ribs. [doc. # 1, p. 5]. Plaintiff alleges that the inmate was sleeping there because SPDC is overpopulated, housing almost 200 inmates. *Id.*

Plaintiff claims that after he fell, he waited on a concrete floor 30-45 minutes for medical help. [doc. # 1, p. 5]. Several inmates used the "loudspeaker" several times to ask the control room to help him. *Id.* Around twenty minutes later, officers from the control room entered, looked at Plaintiff, and told Plaintiff that the warden or assistant warden must "approve [him] going to [the] hospital." *Id.* at 6. Plaintiff suggests that when Assistant Warden Remedies arrived, he told her he was "really hurt." *Id.* Plaintiff later received care at a hospital, including x-rays of his neck and back, but he did not receive an x-ray on his knee. *Id.* Plaintiff is still in pain. *Id.* He appears to claim that Remedies delayed sending him to the hospital. *Id.*

Plaintiff claims that he had to pay for his eye appointment. [doc. # 1, p. 6]. He asks, "why should I be charged for medical when being housed at SPDC[?]" *Id.*

Plaintiff claims that before he was assigned to a dormitory, he "let them know . . . that [he] was not comfortable with A Dorm[.]" [doc. # 1, p. 7]. Plaintiff was, however, assigned to A Dorm for about two months. *Id.* The jail staff "made bets that if they brought [him] a plate of food that it wouldn't last one hour that [he] would have it taken from [him]. [sic]." *Id.* Later, Plaintiff's food was taken from him, and he "got into a fight[.]" *Id.* "They" placed him in B Dorm. *Id.*

Plaintiff faults Sheriff Mitchell because he is in the sheriff's care and the sheriff is the keeper of the jail. [doc. # 1, p. 7].

2

Plaintiff claims that inmates stole his personal property because the facility is overpopulated. [doc. # 1, p. 7].

Plaintiff alleges that he could not obtain a bond because guards erroneously thought that he had "a state hold[.]" [doc. # 1, pp. 7-8]. The guards "didn't even look into the matter for two months." *Id.* at 8. Plaintiff alleges, "mysteriously the hold was lifted, [but] by then I was already denied bond reduction and rehab!" *Id.*

Plaintiff seeks monetary compensation and medical care. [doc. # 1, p. 9].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying

5

*Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

A. <u>Eye Care</u>

Plaintiff, who is legally blind, claims that Warden Sweet and Assistant Warden Remedies denied him a medical examination with an eye doctor, which he needed to obtain eyeglasses. [doc. # 1, p. 4]. At an unknown date after he filed his first pleading, Plaintiff obtained contacts from "family eye care." [doc. # 7, p. 1].

As above, "a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm." *Blank*, 634 F. App'x at 448. Here, Plaintiff does

6

not plead substantial harm from the delay in receiving medical treatment (contacts) for his eyes. The Court should dismiss this claim.

B. Defendant Remedies' Delay in Medical Care After Fall

Plaintiff claims that after he fell he waited on a concrete floor 30-45 minutes for medical help. [doc. # 1, p. 5]. Around twenty minutes later, officers from the control room entered, looked at Plaintiff, and told Plaintiff that the warden or assistant warden must "approve [him] going to [the] hospital." *Id.* at 6. Plaintiff suggests that when Assistant Warden Remedies arrived, he told her he was "really hurt." *Id.* Plaintiff later received care at a hospital, including x-rays of his neck and back, but he did not receive an x-ray on his knee. *Id.* He also received a CAT scan and blood work. [doc. # 7, p. 2]. Plaintiff is still in pain. [doc. # 1, p. 6]. He appears to claim that Remedies delayed sending him to the hospital. *Id.*

Plaintiff does not allege that he suffered substantial harm because of the 30-45-minute delay in care. *See Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (finding no substantial harm resulting from a 45-minute delay in care following alleged excessive force); *Jimenez v. Travis Cty. Sheriff's Dep't*, 856 F. App'x 534, 535 (5th Cir. 2021) ("As for Jimenez's claims that he was denied medical care, the record reflects that he saw medical staff within three hours of the accident. He has not established that this delay resulted in substantial physical or psychological harm."). While Plaintiff complains of generalized pain, he does not allege that he suffered

7

*substantial* harm because of the delay.[3, 4] While the undersigned does not condone the amount of time it took before Plaintiff received treatment, he does not allege that he suffered the substantial harm required.

C. <u>Staff's Delay in Medical Care After Fall</u>

Plaintiff claims that "staff" is at fault for leaving him "helpless on the bottom of the stairs and with no medical staff at hand[.]" [doc. # 7, p. 4]. He adds: "The hospital is a mile away they have no excuse they could of easily called a ambulance to help me instead they mocked me

---

[3] *Compare Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009) (finding that pain following a fall was not sufficiently severe during an hours-long delay in receiving an evaluation); *with Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (finding substantial harm where the plaintiff had a history of cardiac problems and endured *severe chest pains*, and the nurse responsible for the delay knew he had heart problems and lacked his heart medication); *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018) (holding that an inmate eventually diagnosed with calculus of gallbladder with acute cholecystitis, stated a claim where he alleged that prison officials failed for several days to answer his repeated requests to be taken to the hospital for pain "so severe that he thought he might die."); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) (finding a plausible claim where, following a failed procedure to remedy a broken jaw, the plaintiff's jaw was "rebroken" and he suffered constant *excruciating pain during the week-long delay* in treatment); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422-23 (5th Cir. 2017) (finding, where an inmate was stabbed and stomped in an attack, substantial harm because the inmate suffered a "tremendous amount of pain" during the over week-long delay); *Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014) (finding substantial harm from a month-long delay where the plaintiff fell and "was in so much pain that he was unable to lie down in bed or use the toilet properly," pain overtook his entire body, he was "out of it" due to the pain, and doctors eventually inserted four pins and a plate during hip surgery).

[4] *See also Garrett v. Univ. of Texas Med. Branch*, 261 F. App'x 759, 760 (5th Cir. 2008) (finding, where the plaintiff suffered extreme pain from appendicitis, that he did not suffer "substantial harm as a result of the two-day delay."); *Harris v. Walley*, 436 F. App'x 372, 373 (5th Cir. 2011) (finding, where the plaintiff suffered "constant pain" from a year-long delay in surgery to remove several of his teeth, that he did not suffer substantial harm); *King v. Kilgore*, 98 F.3d 1338 (5th Cir. 1996) (finding, where the plaintiff alleged that the delay in care "prolonged his asthma attack and caused him pain, suffering, and discomfort[,]" that even though "an asthma attack is a serious and potentially deadly problem," the plaintiff did not suffer "substantial harm due to the delay."); *Huff v. Manfredi*, 504 F. App'x 342, 344 (5th Cir. 2012) (finding, where the plaintiff alleged "that the defendants delayed and denied him treatment for an eye infection that caused him constant pain, a swollen cheek, and blurry vision[,]" that the plaintiff did not suffer substantial harm because of "inconsequential delays").

laughed and denied helping me for well over 45 minutes I layed helpless on the ground in serious pain. [sic]."

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

Here, the Court should dismiss Plaintiff's claims against "staff" because staff does not qualify as a juridical person. *See Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . .").

If by "staff" Plaintiff refers not to a singular entity but to individuals other than those he identified in his pleadings, he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a constitutional right.

As above, a complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Further, Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See*

9

*Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Plaintiff does not sufficiently identify "any particular defendant's personal involvement in conduct that caused constitutional deprivation." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant). The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm."). To the extent Plaintiff names "staff" as unidentified persons, the Court should dismiss Plaintiff's claims against them.[5]

**3. Slip and Fall**

Plaintiff tripped and fell over an inmate sleeping at the bottom of stairs, injuring his knees and ribs. [doc. # 1, p. 5]. Plaintiff alleges that the inmate was sleeping there because SPDC is overpopulated, housing almost 200 inmates. *Id.* In an amended pleading, he claims that prison staff "allowed an inmate to sleep and block the bottom half of the stairway and it allowed no walking room for anyone . . . ." [doc. # 7, p. 4].

---

[5] Again, the undersigned does not condone the behavior alleged, but Plaintiff does not meet the legal requirements.

As above, however, "staff" is unamenable to suit. The Court should therefore dismiss this claim.

### 4. Paying for Medical Care

Plaintiff claims that he had to pay for his eye appointment. [doc. # 1, p. 6]. He asks, "why should I be charged for medical when being housed at SPDC[?]" *Id.*

"There is . . . no general constitutional right to free health care[,]" and "[c]harging inmates for medical care, furthermore, is not per se unconstitutional." *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001) (cited with approval by *Morris v. Livingston*, 739 F.3d 740, 749 (5th Cir. 2014) (reasoning that the plaintiff did not plead "facts to show that the health care services fee" he paid acted "as a functional denial of medical care . . . .")). "Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim." *Farrakhan v. Johnson*, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) (unpublished) (*cited with approval by Morris*, 739 F.3d at 748). Here, Plaintiff does not claim that he was refused care because he could not pay; rather, he simply claims that he was charged. The Court should dismiss this claim.

### 5. Failure to Protect

Plaintiff claims that before he was assigned to a dormitory, he "let them know . . . that [he] was not comfortable with A Dorm[.]" [doc. # 1, p. 7]. Plaintiff was, however, assigned to A Dorm for about two months. *Id.* The jail staff "made bets that if they brought [him] a plate of food that it wouldn't last one hour that [he] would have it taken from [him]. [sic]" *Id.* Later, Plaintiff's food was taken from him, and he "got into a fight[.]" *Id.* "They" then placed him in B Dorm. *Id.*

11

Plaintiff does not identify a responsible defendant other than "staff," which as above is unamenable to suit. The Court should dismiss this claim.

**6. Sheriff Mitchell**

Plaintiff faults Sheriff Mitchell because he is in the sheriff's care and the sheriff is the keeper of the jail. [doc. # 1, p. 7].

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not allege that the sheriff affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between the sheriff's conduct and any alleged constitutional violation.[6] Instead, Plaintiff pleads only vicarious liability, naming the sheriff as a defendant solely because of the position he holds. *See*

---

[6] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

*Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Nor does Plaintiff allege that this defendant implemented an unconstitutional policy, practice, custom, or procedure that deprived him of any constitutional right.

Accordingly, the Court should dismiss Plaintiff's claims against Sheriff Mitchell.[7]

### 7. Stolen Property, Inability to Obtain Bond, and Sprayed with Mace

Plaintiff claims that inmates stole his personal property because the facility is overpopulated. [doc. # 1, p. 7]. Next, Plaintiff states for the first time in an amended pleading that he was "mistakenly sprayed with mace[.]" [doc. # 7, p. 2]. Finally, he alleges that he could not obtain a bond because guards erroneously thought that he had "a state hold[.]" [doc. # 1, pp. 7-8].

As to the first and second claims above, Plaintiff does not identify a responsible defendant(s). As to the third, "guards"—like "staff" above—does not constitute a juridical entity amenable to suit. And if by "guards" Plaintiff refers not to a singular entity but to individuals other than those he identified in his pleadings, he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a constitutional right. Accordingly, the Court should dismiss these claims.

### 8. Formulaic Claims

For context, the undersigned presents Plaintiff's final claims verbatim: "Steven Procell Reverend Anthony Lowe SR violated RS 14:107.2 hate crimes RS 14:123 Perjury RS 14:40 Intimidation by officers RS 14:125.2 False Statements concerning denial of const rights LA

---

[7] *See Taylor v. LeBlanc*, 851 F. App'x 502 (5th Cir. 2021) ("Taylor failed to identify specifically any action that either defendant took or any policy that either implemented, which subjected Taylor to unconstitutional prison conditions.").

13

const art § 3 right to individual dignity § Freedom From Discrimination and lack of medical treatment denial of follow up appointments and slandering. [sic]." [doc. # 7, p. 5].

Plaintiff does not supply enough pertinent facts to state plausible claims. Even construing these allegations liberally and in Plaintiff's favor, he only presents labels, conclusions, and threadbare, formulaic recitations of causes of action which do not satisfy Federal Rule of Civil Procedure 8. The Court should dismiss these claims.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Jeffrey Harold Box's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

***Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 14th day of November, 2024.

                                                                             Kayla Dye McClusky
                                                                             United States Magistrate Judge